UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JONATHAN TORRES,                                           :

                              Petitioner,                  :        04 Civ. 1512 (GWG)

         -v.-                                              :        OPINION AND ORDER

ROY A. GIRDICH, Superintendent,                           :
Upstate Correctional Facility,
                                                           :
                              Respondent.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Jonathan Torres brings this petition for writ of habeas corpus pro se challenging his

conviction in the New York Supreme Court, New York County, for Criminal Possession of a

Controlled Substance in the Third Degree (New York Penal Law ("NYPL") § 220.16(1)) and

Criminal Sale of a Controlled Substance in the Third Degree (NYPL § 220.39(1)).  Torres was

sentenced as a second felony offender to an indeterminate prison term of 5-1/2 to 11 years'

imprisonment.  The parties have consented to the disposition of this case by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, Torres's petition

is denied.

I.  BACKGROUND

       A.  The Prosecution's Case

       On December 13, 1999, Detective Christopher Koch, Police Officers Edwin Gomez and

Myles Mahady, and Lieutenant Ortiz, conducted a "narcotics enforcement operation" in the

vicinity of Tompkins Square Park, in Manhattan.  (Koch: Tr. 180; Gomez: Tr. 274-75; Mahady:

Tr. 290-91).[1]  At approximately 2:00 p.m., Detective Koch, using binoculars, observed Torres standing inside Tompkins Square Park.  (Koch: Tr. 182, 186-87).  Torres conversed with people for approximately ten minutes and then exited the park out of Detective Koch's view.  (Koch: Tr. 186-87).  Ten minutes later, Detective Koch and Officer Gomez observed Torres return to the park with Cherry Dixon.  (Koch: Tr. 187-88).  Detective Koch then observed Torres turn to Dixon, have a conversation with her, and hand her 3 small, pink rectangular objects.  (Koch: Tr. 188).  Dixon took the 3 objects with her right hand, briefly examined them, and placed them in her right front pants pocket.  (Koch: Tr. 190).  Dixon then reached into her purse, removed money, and handed it to Torres, who placed the money in his right front pants pocket.  (Koch: Tr. 191).

After the transaction, Torres walked further into the park and Dixon exited the park. (Koch: Tr. 192-93).  Based on a description from Detective Koch, Officer Gomez spotted and apprehended Dixon, frisked her, and recovered 3 pink glassine envelopes labeled "Body Bag" from her right front pants pocket.  (Koch: Tr. 194-96; Gomez: Tr. 275-78).

Detective Koch radioed a description of Torres to Officer Mahady and watched Officer Mahady apprehend him.  (Koch: Tr. 194).  After Detective Koch confirmed on the radio that the apprehended man was Torres, Officer Mahady searched Torres and recovered 9 pink glassine envelopes labeled "Body Bag" and $291 in cash from his right front pants pocket.  (Koch: Tr. 196, 201; Mahady: Tr. 295-97, 302, 308-09).  Detective Koch left his post and confirmed that Dixon and Torres were the persons who engaged in the transaction.  (Koch: Tr. 215-16; Gomez:

---

[1]"Tr." refers to the transcript of Torres's trial, held September 19, 20 and 21, 2000, and "S." refers to the transcript of Torres's sentencing, held October 20, 2000.  Both transcripts are contained in Docket #6.

Tr. 279; Mahady: Tr. 302).  The parties stipulated that there was a "reasonable degree of medical certainty" that the 12 pink glassine envelopes recovered from Torres and Dixon all contained heroin.  See Tr. 314-15; Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed Sept. 8, 2004 (Docket #6) ("Resp. Mem."), at 4.

B. Testimony of Officers Gomez and Mahady

After the prosecutor's redirect of Officer Gomez, the trial judge questioned Officer Gomez with respect to the heroin bags:

THE COURT:  Are all heroin bag envelopes marked Body Bag?

THE WITNESS:  No sir.

THE COURT: Can you explain something about the markings, if any, on other kinds of heroin bags?

THE WITNESS: Okay, each individual or group of persons that deal in narcotics have their own name brand or – it's like name brands, it's like buying a pair of Levis.  Basically you know what you're buying and whom you're buying it from.
            Basically if it has another name brand that you are not looking for, you're looking for a specific name and this is what you like, you look for Body Bag, and you know where it's being sold and you know this person who is selling this name brand.  It is the same group.  It is not the same person, it is the same group. It is a brand name for individual sellers.

(Tr. 284-85).

Following the judge's questioning, the prosecutor indicated that she wanted to question Officer Gomez further.  She asked Officer Gomez, "Approximately how many different kinds of packaging or names have you seen on drugs that you've recovered?"  (Tr. 285).  Counsel stated "objection," and the trial judge overruled it.  (Tr. 285).  Officer Gomez replied:

I couldn't even tell you a number, but pretty much every different corner or different group of people have their own brand, so it's – I mean hundreds, hundreds of different, everyone has a different name.

(Gomez: Tr. 285-86).

During Officer Mahady's testimony, the prosecutor asked, "in all of your training and experience in narcotics, have you ever seen packaging identical to what you recovered from the defendant?" (Tr. 301). Defense counsel objected and, rather than ruling on the objection, the Court engaged in a colloquy with the prosecutor, asking "what do you mean by 'identical'?" The prosecutor responded "I want to see if he's ever recovered small pink square envelopes that are stamped Body Bag." (Tr. 301). The Court stated "I will allow the answer." Defense counsel did not object to the rephrased question. Officer Mahady then responded "No, I have not." The prosecutor went on to make additional inquiry of the witness – again without objection – regarding how much packaging he had seen and whether this packaging was unique. (Mahady: Tr. 301-02).

C. Torres's Case

Torres testified in his own defense, stating that he was a heroin addict and that he went to Tompkins Square Park regularly to buy drugs. He needed four or five small bags of heroin a day just to avoid feeling ill. He would buy this much on a daily basis in the park and would sometimes buy more. (Torres: Tr. 340).

On the day he was arrested, Torres saw his friend Dixon at a restaurant and went with her to the park to buy heroin. (Torres: Tr. 330-32). Torres had a few hundred dollars with him that his wife had given him that morning to use for buying furniture. (Torres: Tr. 330). Torres and Dixon each bought heroin from a man named Rick in a wheelchair in the park. (Torres: Tr. 331-32). Torres bought ten glassines of heroin and Dixon bought four, and then each snorted a bag in the park. (Torres: Tr. 331-32). Afterwards, he and Dixon left the park and went to a bakery.

4

Dixon told Torres she had to go to work and needed subway fare. Torres handed Dixon a $3.00 Metrocard and returned to the park on his own. (Torres: Tr. 332-33). About ten minutes later, he was arrested. (Torres: Tr. 333-34).

The day before his arrest, Torres encountered Detective Koch in the park. Detective Koch drove a van through the park, stopped Torres, displayed his weapon and told Torres that he was under arrest on an outstanding warrant. Detective Koch called him by the name "Edwin Ramirez." Detective Koch released him ten minutes later, after Torres handed Detective Koch his driver's license and Detective Koch typed his information into a computer. Torres said he called Detective Koch "a scumbag, jerkoff and so on." In response Detective Koch told him to "get out the fucking park before he busted my ass." (Torres: Tr. 334-36).

D. Rebuttal

On rebuttal, Detective Koch testified that he saw Torres twice before the day of Torres's arrest, including once about five days before. (Koch: Tr. 360). On that occasion, Detective Koch was in a vehicle in Tompkins Square Park with Officer Mahady when he saw Torres with a brown paper bag. Detective Koch asked Torres what was in the bag and Torres said that it was a closed can of beer. Detective Koch told him that even closed containers of alcohol were prohibited in the park and asked Torres for identification. After examining Torres's identification, he told Torres to get rid of the alcohol, and then he left the area. (Torres: Tr. 361).

D. Charge, Verdict, Sentence, and Direct Appeal

The trial court instructed the jury on Criminal Sale of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree as a lesser included charge. (Tr.

417).  Counsel did not request, nor did the trial court give, any special instructions regarding the testimony of Officers Gomez and Malady about the packaging and marketing of narcotics for street sale.  The court's expert witness charge was expressly limited to the testimony of a photographer.  (Tr. 399).

On September 21, 2000, the jury found Torres guilty of Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree.  (Tr. 426-27).

After trial but before his sentencing, Torres moved <u>pro se</u> pursuant to New York Criminal Procedure Law ("CPL") § 330.30 to set aside the verdict.  <u>See</u> Affidavit in Support, dated Sept. 30, 2000 (reproduced as Ex. E to Supplemental Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Dec. 15, 2005 (Docket #15) ("Resp. Supp. Decl.")).  As grounds for the motion, Torres argued that: (1) photographs of the crime scene were improperly admitted at trial; (2) he was prejudiced because the jury foreperson was asleep during a portion of the testimony; (3) he was seen by the jury in handcuffs; and (4) he received ineffective assistance of trial counsel because counsel did not object to the sleeping foreperson or the display of handcuffs.  On October 20, 2000, the trial judge denied Torres's motion on the record and sentenced him to concurrent terms of imprisonment of 5-1/2 to 11 years on each count.  (S. 2-4, 10).

In August 2001, Torres filed a motion to vacate the judgment of conviction pursuant to CPL § 440.10.  <u>See</u> 440 Brief of the Defendant, dated Aug. 14, 2001 (reproduced as Ex. F to Resp. Supp. Decl.).  He raised the following claims: (1) the District Attorney's Office violated his <u>Brady</u> and <u>Rosario</u> rights by failing to disclose information relating to an internal affairs

6

investigation that would have called into question the credibility of the officers who testified at trial; (2) he was deprived of the effective assistance of trial counsel because his trial counsel failed to secure <u>Brady</u> and <u>Rosario</u> material related to the purported internal affairs investigation and did not investigate or interview several witnesses; (3) photographs introduced at trial depicting the scene of the crime from a nearby rooftop were suggestive and prejudicial; and (4) the indictment was defective for failing to include sufficient information to provide Torres with notice of the charges against him.  <u>Id.</u>  The court denied his motion.  <u>See</u> Motion For CPL 440.10, dated Nov. 1, 2001 (reproduced as Ex. H to Resp. Supp. Decl.).

In June 2002, Torres, through new appellate counsel, appealed his conviction and submitted a brief to the Appellate Division, First Department.  <u>See</u> Brief for Defendant-Appellant, dated June 2002 ("Def. App. Br.") (reproduced as Ex. A to Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed Sept. 8, 2004 (Docket #5) ("Resp. Decl.")).  Torres raised a single claim in the Appellate Division.  He argued that he

> was denied his due process right to a fair trial when the court and the prosecutor questioned police witnesses about the packaging of narcotics for street sale, the use of brand names in marketing narcotics, and the supposed uniqueness of the packaging in this case, where these matters were not necessary to resolve any factual issue before the jury, and where the court gave no instructions to the jury limiting the use of the testimony.

Def. App. Br. at 10.  On January 30, 2003, the Appellate Division affirmed Torres's conviction.  <u>People v. Torres</u>, 301 A.D.2d 482, 482 (1st Dep't 2003).  The Appellate Division found that Torres's claim was "unpreserved," and that even if it were not, "the testimony constituted relevant background information and . . . it did not require the court to deliver an instruction on expert witnesses or formally declare the officers to be such."  <u>Id.</u> at 483 (citations omitted).  On April 23, 2003, the Court of Appeals denied Torres leave to appeal this decision.  <u>People v.</u>

Torres, 99 N.Y.2d 659, 659 (2003).

D. Torres's Habeas Petition and Subsequent State Court Proceedings

On February 23, 2004, Torres timely filed his original petition for writ of habeas corpus in this court. See Petition Under 28 USC § 2254 For Writ of Habeas Corpus By a Person in State Custody, filed Feb. 23, 2004 (Docket #1) ("Petition"). The Petition made the same claim that he raised in the Appellate Division. Petition ¶ 13. Respondent filed opposition papers arguing that Torres's claim must be denied because it was rejected by the Appellate Division based on an adequate and independent state procedural ground. See Resp. Mem. at 9; Resp. Decl.

Subsequently, Torres attempted to raise additional claims in a submission dated September 12, 2004. See Traverse and Memorandum of Law, received Sept. 20, 2004 and filed April 20, 2006 (Docket #17) ("Traverse"). Following review of this submission, the Court directed Torres either to inform the Court that he intended to file only the claim raised in his initial habeas petition or to submit a request that the petition be amended to list new grounds, and to state whether any additional claims had been exhausted and whether this Court should stay the proceedings so that any unexhausted claims could be exhausted. See Order, filed Sept. 24, 2004 (Docket #8). Torres responded by requesting to file an amended habeas petition, which the Court endorsed by granting an extension of time for him to inform the court of any additional habeas claims he intended to raise. See Memo Endorsed, filed Sept. 30, 2004 (Docket #10).[2] Thereafter Torres submitted an amended petition and supporting papers. See Amended Petition

_____

[2]Torres incorrectly believes that this order granted his request to amend his petition. See Supplemental Traverse, dated January 19, 2006 and filed April 20, 2006 (Docket #18) ("Pet. Supp. Reply"), at 7.

8

for Writ of Habeas Corpus, dated Oct. 18, 2004 and filed on April 20, 2006 (Docket #19) ("Am. Petition"); Memorandum of Law for Amended Petition Writ of Habeas Corpus (annexed to Am. Petition) ("Pet. Supp. Mem.").

The Amended Petition raised the following unexhausted claims: (1) Torres received ineffective assistance of trial counsel because his trial counsel failed to investigate witnesses' statements, failed to "secure the record," and did not object to the prosecutor's questioning of police witnesses about the packaging of narcotics for sale; (2) he was denied his due process right to a fair trial because photographs introduced at trial were suggestive and prejudicial; (3) he was deprived of a fair trial when "court officers walked him in front of potential jurors" in handcuffs prior to voir dire; and (4) in violation of his due process rights, the prosecutor failed to inform him that his trial counsel was under investigation by the District Attorney's Office and the New York Police Department. Am. Petition ¶ 14. In an order dated December 8, 2004, this Court issued a stay to allow Torres to exhaust any unexhausted claims. See Order, filed Dec. 8, 2004 (Docket #12) ("December 8 Order").

On January 12, 2005, Torres filed in New York Supreme Court, New York County, a pro se motion to vacate the judgment of conviction pursuant to CPL § 440.10. See Notice of Motion to Vacate Judgment, dated Jan. 12, 2005 (reproduced as Ex. L to Resp. Supp. Decl.). In that motion, Torres raised the following claims: (1) ineffective assistance of trial counsel because his trial counsel failed to investigate "several key witnesses['] statements," failed to "secure the record," and did not object to the prosecutor's questioning of police witnesses about the packaging of street narcotics or the court's failure to give a limiting instruction to the jury about that testimony, id. at 10; (2) violation of his due process right to a fair trial because court officers

walked him in handcuffs in front of potential jurors prior to voir dire, id. at 18; and (3) the

prosecutor, in violation of Brady, failed to inform him that his trial attorney was under

investigation by the New York City Police Department and the District Attorney's Office, id. at

20. The trial court denied Torres's motion. See Motion to Vacate Judgment Pursuant to CPL

§ 440.10, dated June 1, 2005 (reproduced as Ex. N to Resp. Supp. Decl.). Torres's application

for leave to appeal this ruling was denied. See Certificate Denying Leave, dated Aug. 25, 2005

(reproduced as Ex. Q to Resp. Supp. Decl.). Respondent filed supplemental papers to address

Torres's newly-exhausted claims. See Supplemental Memorandum of Law in Opposition to the

Petition for a Writ of Habeas Corpus, filed Dec. 15, 2005 (Docket #14) ("Resp. Supp. Mem.");

Resp. Supp. Decl. Torres submitted a reply. See Pet. Supp. Reply.

II. APPLICABLE LEGAL PRINCIPLES

    A. Law Governing Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Under 28 U.S.C. § 2254, a petition for a writ of habeas corpus may not be granted with

respect to any claim that has been "adjudicated on the merits" in the state courts unless the state

court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

    For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d),

it must "finally resolv[e] the parties' claims . . . with res judicata effect," and it must be "based

on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted). As

long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); <u>accord</u> <u>Rosa v. McCray</u>, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision.").

In <u>Williams v. Taylor</u>, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). <u>Williams</u> also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. Rather, the state court's application must have been "objectively unreasonable." <u>Id.</u> at 409.

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner

must demonstrate that the conviction resulted from a state court decision that violated federal law.  See, e.g., id. at 68.

B. Exhaustion

        Before a federal court may consider the merits of a habeas claim, a petitioner is first required to exhaust his available state court remedies.  See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."); accord Daye v. Attorney Gen. of New York, 696 F.2d 186, 190-91 (2d Cir. 1982) (en banc).  To exhaust a habeas claim, a petitioner is required to have presented that claim to each available level of the state courts.  See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (a habeas petitioner must invoke "one complete round of the State's established appellate review process").  The petitioner also must have fairly presented the federal nature of his claim to the state courts.  See Baldwin, 541 U.S. at 29; Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 275 (1971); Daye, 696 F.2d at 191.  The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991).

C. Procedural Default

        Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default constitutes an adequate and independent ground for the state court decision.  See, e.g., Coleman, 501 U.S. at 729-30, 749-50.  "[F]ederal

habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

Although procedurally defaulted claims are deemed exhausted for habeas purposes, a procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); accord Dretke v. Haley, 541 U.S. 386, 393 (2004); Coleman, 501 U.S. at 749-50; Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995); see also Harris, 489 U.S. at 264 n.10 ("[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas.").

## III. DISCUSSION

### A. Officers' Testimony on Narcotics Packaging

The only claim raised in Torres's original Petition was that he was denied his due process right to a fair trial because the trial court and the prosecutor questioned Officers Gomez and Mahady about the packaging and marketing of narcotics for street sale, and "the court gave no instructions to the jury limiting the use of the testimony." Petition ¶ 13. The respondent argues that the Appellate Division's conclusion that Torres's claim was "unpreserved," Torres, 301

A.D.2d at 483, constitutes an independent and adequate state ground for the Appellate Division's decision, and thus that the claim is procedurally barred. See Resp. Mem. at 9. We concur that federal habeas review of Torres's claim is barred due to his failure to preserve it.

As an initial matter, the Appellate Division's statement that Torres's claim was "unpreserved" was sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue. See Harris, 489 U.S. at 265 n.12. In addition, that the Court of Appeals issued a summary denial of leave to appeal is of no moment because where "the last reasoned opinion on the claim explicitly imposes a procedural default" – as is true of the Appellate Division's decision in this case – a federal habeas court "will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); accord Rodriguez v. Schriver, 392 F.3d 505, 511 n.10 (2d Cir. 2004). Thus, the procedural default relied upon by the Appellate Division constituted an "independent" state law ground for its decision.

The remaining question is "whether the state ground relied upon is 'adequate' to preclude federal habeas review." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999). "[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Garcia, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "'firmly established and regularly followed'" must be judged in the context of "the specific circumstances presented in the case," and "of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee v. Kemna, 534

U.S. 362, 386-87 (2002)).  The Second Circuit has set forth the following "guideposts" for

making this determination:

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether petitioner
> had "substantially complied" with the rule given "the realities of trial," and,
> therefore, whether demanding perfect compliance with the rule would serve a
> legitimate governmental interest.

Id. (citing Lee, 534 U.S. at 381-85).

 Here, Torres's attorney never made a contemporaneous objection to the officers'

testimony on the packaging and marketing of narcotics or requested a limiting instruction.  See

generally CPL § 470.05(2).   Torres's claim is that the court should not have admitted evidence

regarding the packaging and marketing of narcotics or the uniqueness of the brand name of

heroin found on Torres.  See Petition ¶ 13.  But, as already noted, defense counsel made no

objection at all during the judge's inquiry of Officer Gomez on these matters.  The only

objection came after this testimony – when the prosecutor asked a question regarding the number

of different types of packaging the officer had seen.  (Tr. 285).  As for the questioning of Officer

Mahady, Torres's counsel made a general objection to the question as to whether the officer had

seen packaging "identical" to what was recovered from Torres.  (Tr. 301).  After the trial court

asked the prosecutor what she meant by "identical," the prosecutor clarified that she was asking

if the officer had "ever recovered small pink square envelopes that are stamped Body Bag."  (Tr.

301).  While the judge stated, "I will allow the answer," (Tr. 301), defense counsel did not object

to the reformulated question or to any subsequent questions.

Applying the <u>Cotto</u> guideposts, it is clear that the Appellate Division could properly rely on its procedural rule to bar this claim. The first <u>Cotto</u> guidepost is not relevant here because "the lack of objection by a party would not, almost by definition, be mentioned by the trial court." <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 242 (2d Cir. 2006) (internal quotation marks omitted). In any event, the lack of objection was "relied upon" by the trial court in the sense that, had a proper objection or request for a limiting instruction been made, it would have allowed the trial court to review and weigh Torres's claim.

The second guidepost also fails to help Torres. Both statutory and case law are clear that Torres was required to object to the relevant evidence contemporaneously and to request a limiting instruction to preserve the issues for appeal. <u>See</u> CPL § 470.05(2); <u>People v. Grant</u>, 186 A.D.2d 267, 267 (2d Dep't 1992) (requiring a "contemporaneous objection to [a] line of questioning" in order to preserve a claim for appellate review); <u>People v. Santiago</u>, 52 N.Y.2d 865, 866 (1981) (failure to make "an application seeking further or more complete instructions" precluded defendant from "assert[ing] the inadequacy of such instructions as error on appeal"); <u>People v. McClain</u>, 250 A.D.2d 871, 873 (3d Dep't 1998) (defendant's failure to enter contemporaneous objections precluded further appellate review of challenges to limiting instruction). This Court is unaware of any exception to the contemporaneous objection rule where a judge is eliciting the allegedly objectionable testimony. <u>See generally</u> <u>People v. Smith</u>, 251 A.D.2d 226, 226-27 (1st Dep't 1998) (where party failed to object to judge's questioning, issue was not preserved for review). Therefore, New York case law in these "specific circumstances" required Torres to object to the judge's questioning of Officer Gomez.

Because Torres failed to make a proper objection to the testimony at issue and also failed to request a limiting instruction, the third guidepost does not help him either. In other words, Torres cannot show that he "substantially complied" with the state rule requiring him to preserve his objection for appellate review.

In sum, applying the three guideposts here indicates that the procedural bar relied upon by the Appellate Division is "firmly established and regularly followed," and thus constitutes an adequate state ground barring review of the merits of Torres's claim. As a result, habeas review of Torres's original claim is unavailable unless he can establish cause for his default and resulting prejudice or can demonstrate that he is "actually innocent." See, e.g., St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004). Even construing his pro se petition liberally, see Williams v. Kullman, 722 F.2d 1048, 1050-51 (2d Cir. 1983), Torres has made no such showing with respect to the claim in his original petition. Therefore, the claim may not be considered on federal habeas review.

B. Torres's Motion to Amend the Petition

As already noted, Torres seeks to have this Court consider not merely his original claim but also a number of additional claims, which were the subject of his recent state court applications. See Notice of Motion to Vacate Judgment, dated Jan. 12, 2005 (reproduced as Ex. L to Resp. Supp. Decl.). Thus, Torres has sought to amend his original petition to include these additional claims as grounds for habeas relief. Case law is clear that leave to amend a petition for writ of habeas corpus should be governed by the standards set forth in Fed. R. Civ. P. 15. See, e.g., Mayle v. Felix, 125 S. Ct. 2562, 2566 (2005); Littlejohn v. Artuz, 271 F.3d 360, 363-64 (2d Cir. 2001).

The problem for Torres here is that he did not first seek to amend his petition until September 12, 2004, when he submitted his "Traverse and Memorandum." <u>See</u> Traverse. The time period for him to file a federal habeas petition, however, expired on July 22, 2004 – that is, one year and 90 days after April 23, 2003, when the Court of Appeals denied him leave to appeal, <u>Torres</u>, 99 N.Y.2d at 659. <u>See</u> 28 U.S.C. 2244(d)(1); <u>McKinney v. Artuz</u>, 326 F.3d 87, 96 (2d Cir. 2003).[3] Thus, his motion to amend was submitted nearly two months after the time period for filing his habeas petition had expired.

As a result, the respondent argues that the motion to amend is untimely, pointing to Fed. R. Civ. P. 15(c), which provides in pertinent part that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Respondent contends that the new claims do not arise out of the "conduct, transaction, or occurrence" set forth in the original petition. <u>See</u> Resp. Supp. Mem. at 8-9.

The respondent is correct with respect to the majority of Torres's new claims. In <u>Mayle</u>, the Supreme Court held that for purposes of a motion to amend a petition for writ of habeas corpus, the trial at issue does not constitute a "transaction" or "occurrence" for relation-back purposes. 125 S. Ct. at 2574 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the

---

[3]Petitioner makes reference to the fact that he was confined in his prison's "Special Housing Unit" for an extended period and had limited access to legal materials. <u>See</u> Pet. Supp. Reply at 1-4. While the limitations period for habeas petitions may be equitably tolled in "rare and exceptional" circumstances, <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000), mere confinement in a special housing unit does not constitute such circumstances. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Girdich</u>, 2006 WL 473886, at *2 ( S.D.N.Y. Feb. 27, 2006).

federal habeas statute's] limitation period would have slim significance."). Rather, the claims sought to be added must arise out of a "common core of operative facts uniting the original and newly asserted claims." <u>Mayle</u>, 125 S. Ct. at 2572 (quotation marks omitted). One example given in <u>Mayle</u> of relation back is "when the new claim is based on the same facts as the original pleading and only changes the legal theory." <u>Id.</u> at 2575 n.7. By contrast, <u>Mayle</u> held that an amended habeas petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." <u>Id.</u> at 2566.

Here – with one exception – none of Torres new claims relates to the admission of the police officers' testimony regarding the drug packaging or the trial court's failure to give a limiting instruction regarding that evidence. Rather, the new claims relate to his attorney's alleged failure to conduct an appropriate investigation, the introduction of photographs of trial, his appearance before jurors prior to voir dire, and an alleged <u>Brady</u> violation. <u>See</u> Am. Petition ¶ 14. The one exception is Torres's claim that his trial counsel was ineffective in failing to object to the testimony of Officers Gomez and Mahady about narcotics packaging and marketing, and also ineffective in failing to request a limiting instruction with respect to this testimony. <u>See</u> Am. Petition ¶ 14(2). Accordingly, this claim relates back to the date of the original filing under Fed. R. Civ. P. 15(c). <u>See</u>, <u>e.g.</u>, <u>Serrano v. Burge</u>, 2005 WL 2063765, at *4 (S.D.N.Y. Aug. 22, 2005) (ineffective assistance of counsel claim was based on the "same common core of operative facts as his original habeas petition" because "[a]lthough the ineffective assistance of appellate counsel claim [was] based on a new theory of relief, it [arose] from the same facts as the original habeas petition"); <u>Pratt v. Upstate Correctional Facility</u>, 413 F. Supp. 2d 228, 237 (W.D.N.Y. 2006) (same). Leave to amend the petition to include the

remaining claims, however, must be denied.

Torres argues that if the Court "would have wished for petitioner to be time-barred then the court would never have issued the stay." Pet. Supp. Reply at 7. By this argument, Torres seems to assume that this Court had already ruled favorably on Torres's request to amend. In fact, the Court at no time made a ruling on this application, <u>see</u> Order, filed Sept. 24, 2004 (Docket #8) (giving Torres a deadline for submitting his "proposed" amended petition), and issued the stay because it was not opposed by respondent, <u>see</u> December 8 Order at 1. Torres obviously has not been prejudiced by the stay since it gave him the opportunity to present his claims in state court (which might have ruled in his favor) and had no bearing on this Court's ruling on the merits of his proposed amendment to the Petition.

In sum, the motion to amend the petition is denied except insofar as Torres seeks to amend his claim to include a claim of ineffective assistance of counsel with respect to the claim raised on his direct appeal. That claim is discussed in the next section.

C. <u>Ineffective Assistance of Counsel Claim</u>

Torres asserts that he was denied effective assistance of counsel when his trial attorney failed to "raise objections at the court's initial questioning and inquiry of police witnesses about the packaging of narcotics for street sale; and the use of brand names in marketing narcotics, and the supposed uniqueness of the packaging in this case, where these matters were not necessary to resolve any factual issue before the jury," Am. Petition ¶ 14(2), and "where the court gave no instructions to the jury limiting the use of the testimony." Def. App. Br. at 10.

Torres first raised this claim – along with several other ineffective assistance of counsel claims – in state court on January 12, 2005, by filing in New York Supreme Court, New York

County, a pro se motion to vacate the judgment of conviction pursuant to CPL § 440.10.[4]  See

Notice of Motion to Vacate Judgment, dated Jan. 12, 2005 (reproduced as Ex. L to Resp. Supp.

Decl.).  The court denied Torres's motion because the claim was "previously raised and

rejected."  See Motion to Vacate Judgment Pursuant to CPL § 440.10, dated June 1, 2005

(reproduced as Ex. N to Resp. Supp. Decl.).  Respondent argues that Torres's ineffective

assistance claim is now procedurally barred because "the latest state court's ruling on the claim

[in the Appellate Division] rested upon" an adequate and independent state law ground.  Resp.

Supp. Mem. at 16.   This argument raises difficult questions of state law, however, and thus the

Court will exercise its power simply to reject the claim on the merits.  See Dunham v. Travis,

313 F.3d 724, 729-30 (2d Cir. 2002) ( "[H]urdling the procedural question to reach the merits of

a habeas petition" may be justified if the underlying issues "were easily resolvable against the

habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")

(internal quotation marks and citation omitted).

### 1.  Law Governing Claims of Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the

two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  The

Strickland test has been characterized as "rigorous" and "highly demanding."  Pavel v. Hollins,

261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted).  To meet

Strickland, a petitioner must show (1) "that counsel's representation fell below an objective

standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's

---

[4]Torres had previously filed another motion to vacate the judgment of conviction
pursuant to CPL § 440.10, but he did not raise this claim in that motion.  See 440 Brief of the
Defendant, dated Aug. 14, 2001 (reproduced as Ex. F to Resp. Supp. Decl.).

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; accord Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689); see also Dunham, 313 F.3d at 730 (affording counsel a "strong presumption" of competence). In assessing whether an attorney's conduct was constitutionally deficient, "[t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord Pavel, 261 F.3d at 216.

With respect to the second prong – whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different – a court "requires some objective evidence other than defendant's assertions to establish prejudice." Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)). "A 'reasonable probability' in this context is one that 'undermine[s] confidence in the outcome.'" Pavel, 261 F.3d at 216 (alteration in original) (quoting Strickland, 466 U.S. at 694).

While there are two prongs to the inquiry, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; accord, e.g., Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 371 (S.D.N.Y. 1999); Franza v. Stinson, 58 F. Supp. 2d 124, 134 (S.D.N.Y. 1999); Torres v. Irvin, 33 F. Supp. 2d 257, 277 (S.D.N.Y. 1998).

    2. Analysis

Torres's ineffective assistance of counsel claim raises two issues: (1) his counsel's failure to object to the police officers' testimony regarding the packaging and marketing of heroin, and (2) his counsel's failure to request a limiting instruction regarding this testimony, which Torres labels as "expert" testimony.

    a. Admission of Officers' Testimony. Torres asserts that his trial counsel should have objected to the testimony of Officers Gomez and Mahady because it was irrelevant expert testimony, and in any event such expert testimony should not have come from police officers who were also testifying as fact witnesses for the prosecution. See Pet. Supp. Mem. 18-19; Def. App. Br. at 11-12.

This claim fails for three independent reasons. First, counsel had good reason not to object to the testimony regarding the unique packaging of the heroin found on Torres and Dixon, since this testimony corroborated Torres's defense that he and Dixon were merely buyers who had bought heroin from the same source: a man in a wheelchair. (Torres: Tr. 331-32). Thus, counsel had good reasons of trial strategy to permit this testimony to stand.

Second, any objection to the testimony would have been meritless. Under New York law, a police officer may provide information "necessary to educate the jury about relevant matters beyond the ken of an ordinary juror." People v. Torrieate, 289 A.D.2d 134, 134 (1st Dep't 2001) (admitting testimony concerning street-level narcotics operations). In addition, it was not necessary for the police officers to be qualified as experts in order for the trial court to receive such testimony. See, e.g., People v. Powell, 262 A.D.2d 134, 134 (1st Dep't 1999). Torres claims that People v. Brown, 97 N.Y.2d 500, 505 (2002), held that it is improper for officers to testify both as fact and expert witnesses. See Def. App. Br. at 11-12, 14. However, Brown made no such holding. Instead, it merely noted that "[t]estimony . . . from a source other than the undercover officer (a fact witness), may be helpful to the jury in understanding the evidence presented and in resolving material factual issues." Brown, 97 N.Y.2d at 505 (emphasis added). It left intact New York's rule that it is proper for an officer to testify "both as a witness to the instant sale and as an expert in street level drug sales." People v. Lamboy, 228 A.D.2d 366, 367 (1st Dep't 1996); accord People v. Johnson, 278 A.D.2d 68, 69 (1st Dep't 2000) ("The court properly permitted the same officer to testify as both a fact witness and expert witness."). Because the officers' testimony was permissible under New York law – and there is no federal constitutional prohibition on such testimony – it was not unreasonable for Torres's counsel to decide not to object to it.

Finally, even if the admission of the testimony were objectionable, there is no "reasonable probability" that the outcome would have been different without the officers' testimony regarding the packaging and marketing of narcotics. As Torres recognizes, the case boiled down to a "credibility contest between" the officers and Torres. See Def. App. Br. at 14.

Either the jury believed the officers regarding what Torres was doing in the park that day or they did not. The presence vel non of testimony regarding the packaging of the narcotics had no bearing on this question inasmuch as the existence of unique packaging was equally consistent with Torres's defense. Thus, Torres cannot satisfy the second prong of the Strickland test with respect to the admission of the testimony.

b. Limiting Instruction. Torres claims that because there was expert testimony on the drug trade, New York state law dictates that a limiting instruction was "mandatory" to inform the jury that "'the testimony being admitted should in no manner be taken as proof that the defendant was engaged in the sale of narcotics.'" See Def. App. Br. at 13 (quoting Brown, 97 N.Y.2d at 506). It is not necessary to reach this question because Torres cannot show a "reasonable probability" that the inclusion of a limiting instruction would have altered the outcome of his trial. As just discussed, this case was ultimately a contest regarding whether the officers correctly observed the transaction that Torres undertook in the park. Furthermore, a limiting instruction was unnecessary to eliminate the risk that the jury might unfairly credit the officers' testimony based on any alleged status as experts because the court never designated them as experts. Therefore, there is no reason to believe that a special instruction regarding the use of the officers' testimony on packaging would have made any difference to the jury's consideration of this question.

In sum, because both aspects of the ineffective assistance claim fail to satisfy the Strickland test, the claim must fail.

## Conclusion

For the foregoing reasons, Torres's petition is denied. Because Torres has not made a

substantial showing of the denial of a constitutional right, the Court will not issue a certificate of

appealability pursuant to 28 U.S.C. § 2253(c).  The Clerk is requested to enter judgment.

SO ORDERED.

Dated: May 9, 2006
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Jonathan Torres
00-A-6207
Auburn Correctional Facility
P.O. Box 618
Auburn, NY  13024

Ashlyn Dannelly
Assistant Attorney General
120 Broadway
New York, NY  10271

substantial showing of the denial of a constitutional right, the Court will not issue a certificate of

appealability pursuant to 28 U.S.C. § 2253(c). The Clerk is requested to enter judgment.

SO ORDERED.

Dated: May 9, 2006
     New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Jonathan Torres
00-A-6207
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

Ashlyn Dannelly
Assistant Attorney General
120 Broadway
New York, NY 10271